Paul D. Vink
Seema Shah
Bose McKinney & Evans LLP
111 Monument Circle, Suite 2700
Indianapolis, IN 46204
P 317-684-5422
F 317-223-0422
pvink@boselaw.com
sshah@boselaw.com

Dean E. Masserman
Vorzimer Masserman, P.C.
23035 Ventura Boulevard
Woodland Hills, CA 91364
P 818.999.1950
F 818.999.1955
dmasserman@vmfirm.com

Attorneys for Plaintiff Andrew Conru

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW B. CONRU, an individual, <br><br> Plaintiff, <br><br> vs. <br><br> JONATHAN B. BUCKHEIT, an individual, <br><br> Defendant. | CASE NO.:   5:23-cv-4056 <br><br> **COMPLAINT FOR DECLARATORY RELIEF, BREACH OF CONTRACT, BREACH OF THE CONVENANT OF GOOD FAITH AND FAIR DEALING, AND SPECIFIC PERFORMANCE** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiff, Andrew B. Conru ("Conru"), by counsel, for his Complaint for Declaratory and Other Relief against Defendant, Jonathan B. Buckheit ("Buckheit"), states the following:

## INTRODUCTION

1. This lawsuit pertains to a dispute over a Call Option Agreement ("COA") concerning the majority of shares in FriendFinder Networks Inc. ("FFN"), a company founded by Conru

**1**
**COMPLAINT FOR DECLARATORY AND OTHER RELIEF**

in the 1990s. Conru and Buckheit, the current CEO, entered into this agreement on February 18, 2021. Despite this agreement (attached as **Exhibit A**), Buckheit is now denying its validity, effectively attempting to seize control of Conru's company and reap undue financial gains.

2. The COA was part of a three-way transaction that also involved a banker owning 51% of FFN's debt (approximately Ninety Million Dollars ($90 Million)) and equity (350,297 shares). Conru facilitated this deal, paying the banker Sixty Million Dollars ($60,000,000) for the debt and equity. Buckheit contributed a mere One Thousand Dollars ($1,000). In this arrangement, Conru acquired the FFN debt, and Buckheit was allowed to hold the FFN equity subject to Conru's repurchase right memorialized in the COA. Conru agreed to this arrangement, with the understanding that he could regain the majority control of FFN whenever he wished, allowing Buckheit, the current CEO and a trusted friend, to maintain the FFN equity and focus on the business while Conru sought other opportunities.

3. In the COA, Conru maintained the right to purchase the FFN equity from Buckheit by paying $1,000, the same nominal sum Buckheit paid to hold the FFN equity. The COA set the repurchase price for the FFN equity at $14.28 per share, amounting to $5,000,000 for all shares. On February 3, 2023, Conru exercised his right to purchase the unvested FFN equity and retake control of FFN. Buckheit, however, is refusing to abide by the COA and transfer the agreed-upon FFN equity. Buckheit is in breach and Conru brings this action to get back his shares and control of the company he founded.

## THE PARTIES

4. Conru is an individual and citizen of the State of Washington.
5. Buckheit is an individual and citizen of the State of California.

## JURISDICTION

6. This is an action for declaratory judgment pursuant to the Federal Declaratory Judgment Act, codified at 28 U.S.C. § 2201, *et seq*, and Rule 57 of the Federal Rules of Civil Procedure, breach of contract, breach of the covenant of good faith and fair dealing, and

specific performance.

7. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. The parties to this action reside in different states, and the value of FFN shares that Conru wishes to purchase—and Buckheit refuses to sell—exceeds $75,000.

**VENUE**

8. Venue is proper in this District pursuant to the COA's forum-selection clause, which states, "Any legal suit, action or proceeding arising out or based upon this Agreement or the transactions contemplated hereby may be instituted in the federal courts of the United States of America or the courts of the State of California, and each party irrevocably submits to the exclusive jurisdiction of such courts in any such suit, action or proceeding." (Ex. A. at 4.)

9. Venue is also proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Buckheit, the Defendant, resides in this District.

**FACTUAL BACKGROUND**

10. Conru founded the company that became FFN in 1996 and grew it into a very successful online dating and adult content platform.

11. In late 2007, after years of stress and long hours, Conru sold the company, which by then was twice the size of Match.com, to Penthouse Media Group, Inc. for cash and notes. Conru then watched helplessly as FFN failed to innovate and declined.

12. In 2013, the company endured bankruptcy and was burdened with substantial debts with exorbitant 14% interest rates.

13. In 2015, Conru recruited his long-time friend, Jon Buckheit, to be the new CEO of FFN. The company continued to struggle, barely able to pay just the interest on its debt, and the value of the company stock became virtually worthless. The company lacked innovation and was still running much of the same software personally written by Conru before 2007. Without immediate action by Conru the Company was likely destined for another default.

//

*The February 2021 Transaction and Origins of the Call Option Agreement*

14. Seeing FFN's ongoing predicament, Conru elected in February 2021 to orchestrate a deal to take back FFN by acquiring a majority of its senior debt and equity.

15. Conru, being heavily involved in philanthropic work, lacked the time to fully focus on the Company's operations and thus had concerns about becoming the majority owner. To alleviate Conru's immediate concerns, and seeing an opportunity for a financial windfall Buckheit offered to "hold" the shares. If Conru wanted to repurchase all of the shares, it would cost Conru—and benefit Buckheit—five million dollars.

16. It was critical to Conru that he remain able to purchase a majority stake in FFN in the future if he deemed it necessary or desirable. Thus, in exchange for Conru granting Buckheit the ability to "hold" the majority stock initially, Conru and Buckheit executed the COA.

17. The COA provides Conru a "Call Right," which, when exercised, allows Conru to purchase FFN shares from Buckheit. (Ex. A at 1.)

18. Under the COA, the Call Right is irrevocable for the twelve-year period specified in the Agreement, or until February 18, 2033. (*Id.*)

19. The COA was executed in conjunction with, and on the same day as, several other contracts as part of a larger transaction facilitated by Conru, which resulted in significant financial and related benefits to Buckheit.

20. First, as referenced in the COA's first recital, on February 18, 2021, Buckheit entered into an Equity Purchase and Sale Agreement with Kestrel Industries I LLC and Kestrel Industries II LLC ("Kestrel affiliates") which together owned 51% of the company debt and equity. (*See* Ex. A at 1.) The Purchase Agreement is attached as **Exhibit B**.

21. The Purchase Agreement granted Buckheit the right to purchase 350,297 shares of common stock of FFN, and thereby assume majority control of FFN, for the nominal sum of $1,000. (Ex. B at 1.)

22. Second, on February 18, 2021, FFN's Stockholders' Agreement was amended ("First Amendment to Stockholders' Agreement") to reflect Conru's consent to Buckheit's

purchase of the FFN shares. The First Amendment to Stockholders' Agreement is attached as **Exhibit C**.

23. Third, on February 18, 2021, pursuant to a Note Purchase and Sale Trade Confirmation and Agreement, Conru (acting through his trust) agreed to purchase debt instruments held by the Kestrel affiliates for a sum exceeding $60 million. The Note Purchase and Sale Trade Confirmation and Agreement is attached as **Exhibit D**.

24. Fourth, in the COA, Conru agreed to enter into a second amendment to the Stockholders' Agreement that provided additional benefits to Buckheit, including director representation on FFN's Board of Directors. The Second Amendment to Stockholders' Agreement is attached as **Exhibit E.**

25. Conru could have easily purchased the FFN shares from the Kestrel affiliates himself for the nominal sum of $1,000. Instead, Conru gave Buckheit the opportunity to obtain the shares for just $1,000, but entered into the COA for the explicit purpose of ensuring that Conru had the ability to purchase FFN shares from Buckheit if and when Conru chose to do so.

***Conru's Exercise of the Call Right***

26. Pursuant to the COA, Buckheit is the "Grantor," and Conru is the "Grantee." (Ex. A at 1.)

27. The COA unambiguously states, "Grantee desires to have the right to purchase the [FFN] Shares from Grantor, and Grantor desires to grant such right to Grantee[.]" (*Id.*)

28. The terms of Conru's Call Right are set forth in the Agreement's Section 1(a):

   a. Right to Purchase. Subject to the terms and conditions of this Agreement, for a period commencing on the date hereof and ending at the close of business on a date that is twelve (12) years from the date hereof (the "Exercise Period"), Grantee shall have the right from time to time (the "Call Right"), but not the obligation, to cause Grantor to sell all or a portion of the Shares, subject to the vesting provisions set forth in Section 1(b) below, at the Call Purchase Price (as defined in Section 2 of this Agreement). To secure this Call Right, Grantee shall pay a fee of $1,000.00 to Grantor (the "Call Option Fee").
   (*Id.*)

29. On February 3, 2023, Conru sent a letter, by certified mail, to Buckheit, referencing the COA and enclosing a $1,000 check for payment of the Call Option Fee.

5
**COMPLAINT FOR DECLARATORY AND OTHER RELIEF**

30. In response, Buckheit emailed Conru, stating Buckheit would return the $1,000 check; that Conru could no longer "consummate the call option" because Conru had not tendered the payment within a reasonable time; and that Buckheit had revoked the option.

31. There is no record of Buckheit attempting to revoke the option at any point after the COA's execution, and Buckheit has provided no such evidence.  Regardless, the Call Option is irrevocable under California law such that any attempted revocation by Buckheit would be invalid.

32. Moreover, Buckheit's position that Conru waived his call option rights by not timely tendering the $1,000 Call Option Fee is belied by the plain language of Section 7 of the COA, which states that "no failure to exercise, or delay in exercising, any rights, remedy, power or privilege arising from this Agreement shall operate or be construed as a waiver thereof …."

33. On February 23, 2023, Conru, by counsel, sent Buckheit a second letter to explain that, under California law, Conru's Call Right was an irrevocable option for the twelve-year period specified in the COA because (a) Buckheit had received significant consideration at the time the COA was entered into (February 18, 2021), and (b) Conru had tendered the $1,000 Call Option Fee before the option's expiration (February 18, 2033).

34. In response, Buckheit, through counsel, again refused to recognize Conru's Call Right despite (1) the plain language of the COA, and (2) the fact the only reason Buckheit had any shares was because Conru structured the 2021 deal to permit Buckheit to hold the shares.

35. On May 17, 2023, Conru, by counsel, delivered a letter to Buckheit constituting a Call Exercise Notice to purchase all of Buckheit's unvested shares. A true and accurate copy of the May 17th letter is attached as **Exhibit F**.

36. With the same letter, Conru re-tendered the $1,000 Call Option Fee and set a closing date of June 2, 2023, to purchase all unvested shares.

37. Once again, Buckheit responded to the May 17th letter by refusing to recognize the validity of the Call Exercise Notice and by refusing to transfer his unvested shares.

38. Buckheit has consistently and repeatedly refused to take any further steps toward consummating a sale of FFN shares to Conru as required in the COA. Instead, Buckheit has agreed to transfer shares only if Conru pays exorbitant sums inconsistent with the COA.

39. In short, Conru structured the 2021 deal such that Buckheit could hold the majority equity interest and would be paid millions for the stock (that Buckheit purchased for just $1,000) if Conru exercised his rights under the COA. Buckheit's thanks for Conru's benevolence is to refuse to adhere to the COA and instead seek to extract millions more from Conru.

## COUNT I: DECLARATORY JUDGMENT

40. Conru incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

41. Under the COA's terms, Conru and Buckheit agreed that Conru could exercise his Call Right to purchase FFN shares from Buckheit. (Ex. A.)

42. On the date the COA was executed, Conru provided Buckheit significant consideration for the irrevocability of Conru's Call Right until February 18, 2033, based on the various other contracts described above that were part of the February 2021 transaction.

43. Despite the irrevocable nature of Conru's Call Right, Buckheit refuses to recognize the validity of Conru's Call Right and Conru's ability to exercise the same.

44. Consequently, Buckheit refuses to take the necessary steps to consummate the sale of FFN shares to Conru.

45. Moreover, Conru initiated the exercise of his Call Right on February 3, 2023, prior to any revocation by Buckheit.

46. An actual and immediate controversy exists between Conru and Buckheit. That is, the parties dispute, under the terms of the COA and governing California law, whether Conru's Call Right is irrevocable and whether Conru can presently exercise his Call Right.

47. Pursuant to 28 U.S.C. § 2201, this Court is empowered to adjudicate and decide the

parties' respective rights and obligations, including a determination under applicable California law that (a) Conru timely secured the right to exercise his Call Right on February 3, 2023, prior to any purported revocation; (b) Conru's Call Right under the COA is irrevocable until February 18, 2033; and (c) Buckheit's refusal to recognize Conru's exercise of the Call Right is a breach of the COA.

## COUNT II: BREACH OF CONTRACT

48. Conru incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

49. The COA is a valid and enforceable contract.

50. Conru has performed all conditions precedent to performance of the COA, or they have been excused.

51. Buckheit breached the COA by refusing to recognize the validity of Conru's Call Right and Conru's ability to exercise the same.

52. Conru has been damaged as a result of Buckheit's breach because Conru has been unable to acquire the shares of FFN to which the parties agreed. Moreover, Conru has been deprived of the ability to purchase sufficient shares to take control of FFN.

## COUNT III: BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

53. Conru incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

54. Conru and Buckheit entered into the COA, which is a valid and enforceable contract.

55. Conru performed all, or substantially all, of his obligations under the COA.

56. All conditions precedent to Buckheit's performance have occurred or been excused.

57. By refusing to recognize the validity of Conru's Call Right and Conru's ability to exercise the same, Buckheit has deprived Conru of receiving the bargained-for benefits under the COA.

58. Buckheit has not acted fairly and in good faith by refusing to accept Conru's Call Right. Indeed, Buckheit has insisted on additional terms and compensation not reflected in the COA and not contemplated by the parties when Conru granted Buckheit the right to hold

the majority equity position until Conru decided to purchase it. In essence, Buckheit has attempted to leverage the majority shareholder position Conru granted to him to extort additional concessions from Conru.

59. Conru has been harmed by Buckheit's conduct in that he has been unable to purchase shares as provided in the COA.

## COUNT IV: SPECIFIC PERFORMANCE

60. Conru incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

61. The COA was a contract sufficiently definite and certain in its terms to be enforced.

62. The COA was just and reasonable.

63. Conru has performed his obligations under the COA by tendering the $1,000 fee, but Buckheit has failed to perform by refusing to recognize Conru's Call Right.

64. The COA was supported by adequate consideration.

65. Consequently, the COA is enforceable and specific performance of the COA is warranted. Specifically, Conru requests that this Court enter an order confirming Conru's ability to acquire FFN shares from Buckheit consistent with the terms of the COA.

## PRAYER FOR RELIEF

Wherefore, Conru respectfully requests that the Court:

(1) Issue a declaratory judgment, declaring that:

(a) the COA is a valid and enforceable contract;

(b) under the COA, Conru's Call Right is an irrevocable option until the period specified, or February 18, 2033; and

(c) Buckheit is required to recognize Conru's right to exercise the Call Right and transfer FFN shares as stated in the COA due to Conru's exercise of said rights and tender of $1,000.

(2) Award Conru damages for Buckheit's breach of contract;

(3) Award Conru damages for Buckheit's breach of the duty of good faith and fair dealing;

(4) Order that Buckheit must specifically perform the COA; and

(5) Grant Conru such other relief as the Court deems just and appropriate.

**DEMAND FOR JURY TRIAL**

Conru demands trial by jury for all issues triable by a jury.

Dated:  August 10, 2023             Vorzimer Masserman, P.C.


By: */s/ Dean Masserman*
Dean Masserman
23035 Ventura Boulevard
Woodland Hills, CA 91364
P 818.999.1950
F 818.999.1955
dmasserman@vmfirm.com

Paul D. Vink (*pro hac vice pending*)
Seema Shah (*pro hac vice pending*)
Bose McKinney & Evans LLP
111 Monument Circle, Suite 2700
Indianapolis, IN 46204
P 317-684-5422
F 317-223-0422
pvink@boselaw.com
sshah@boselaw.com

Attorneys for Plaintiff, Andrew B. Conru

4617109_1

**10**
**COMPLAINT FOR DECLARATORY AND OTHER RELIEF**