NOTE PURCHASE AND SALE

TRADE CONFIRMATION AND AGREEMENT

Entered into on February 18, 2021 (the "**Trade Date**")

1. Subject to the terms and conditions hereof, each of **KESTREL INDUSTRIES I LLC** and **KESTREL INDUSTRIES II LLC** (each, a "**Seller**", and together, "**Sellers**") hereby agrees (severally and not jointly) to sell all of the 14% First Lien Senior Secured Notes due 2025 (the "**Notes**") issued by FriendFinder Networks Inc. (the "**Company**") owned by them to the Andrew B. Conru Trust(the "**Conru Trust**") and to the Company in accordance with the allocations set forth herein, and each of the Conru Trust and the Company (severally, and not jointly) hereby agrees to purchase the Notes in accordance with such allocations and the terms set forth herein. The principal amount of Notes owned by each Seller is set forth on the signature page hereto.

2. Sale to the Conru Trust: Within seven business days after the Trade Date, on a date agreed upon by Sellers and the Conru Trust (the "**Settlement Date**"), the Sellers will sell to the Conru Trust and the Conru Trust will purchase from Sellers an aggregate of $79.82 million principal amount of Notes (with the allocation of Notes sold by each Seller to be determined by Sellers) at a purchase price of $60 million (75.17% of principal amount) plus accrued and unpaid interest on the $79.82 million principal amount of Notes through the Settlement Date (Kestrel I selling $35,691,000 principal amount of Notes and Kestrel II selling $44,129,000 principal amount of Notes). Settlement shall be effectuated by "free delivery" of the Notes by Sellers into a brokerage account designated by the Conru Trust. The Conru Trust will initiate wire transfer(s) in the amount of the purchase price at 10:00 am Eastern Time on the Settlement Date into an account or accounts designated by the applicable Seller and each such Seller shall initiate the delivery of the Notes into the Conru Trust's account at 10:00 am Eastern Time. Immediately after initiation of such transaction, each Seller and the Conru Trust shall provide the other with copies of such initiation instructions. At the Conru Trust's option the accrued and unpaid interest that is owed as part of the purchase price may be paid when received by the Conru Trust from the Company rather than on the Settlement Date.

3. Sale to the Company: On the Settlement Date, the Sellers will sell to the Company and the Company will purchase from Sellers the remaining principal amount of Notes owned by Sellers (the "Remaining Notes") at a purchase price of 75.17% of the principal amount plus accrued and unpaid interest on the Remaining Notes through the Settlement Date. Settlement shall be effectuated by "free delivery" of the Notes by Sellers into a brokerage account designated by the Company. Sellers will initiate the delivery of the Notes into the Company's account after confirming the Company is initiating the wire of the purchase price to an account or accounts designated by Sellers.

4. Representations and Warranties of Sellers. Sellers hereby severally but not jointly represent and warrant to the Conru Trust and the Company as follows:

(a) Title to Notes. As of both the Trade Date and the Settlement Date, each Seller has

1

good title to, and is the sole owner of, the respective Notes held by each such Seller, free and clear of any liens, encumbrances or other charges.

(b) Solvency. Each Seller is able to pay its debts as they come due and its assets exceed its liabilities and this will remain true and correct pending the consummation of the transactions contemplated hereby and following the Settlement Date.

5. Mutual Representations and Warranties. Each of the Sellers (severally and not jointly), on the one hand, and the Conru Trust, on the other hand, represents and warrants to the other party that: (a) it is a sophisticated entity and has adequate information with respect to the transaction contemplated herein; (b) it has carefully reviewed the terms and provisions of this agreement; (c) it has, or has access to, such information as it deems appropriate under the circumstances concerning, among other things, the businesses, financial condition and prospects of the Company and the value of the Notes; (d) it has received independent legal advice from its attorneys with respect to this agreement; (e) it has independently and without reliance on any other party, and based on such information as it has deemed appropriate, made its own analysis and decision to enter into this agreement; (f) it is an accredited investor within the meaning of Rule 501(a) of the Securities and Exchange Act of 1934 (the "Act") and, in the case of the Conru Trust, it is purchasing the Notes for investment purposes and not with a view to, or for offer or sale in connection with, any distribution in violation of the Act; (g) this agreement and all obligations of such party thereunder are the legal, valid and binding obligations of each such party, enforceable in accordance with the terms of this agreement; (h) it is duly organized, validly existing and in good standing under the laws of its jurisdiction of organization and has full power, authority and right to execute, deliver and perform its obligations under this agreement and (i) the execution and delivery of this agreement and the performance by such party of its obligations hereunder will not conflict with or be a breach of any provision of any constituent document of such party, law, regulation, judgment, order, decree, writ, injunction, or other contract, agreement or instrument to which each such party is subject; and each party has obtained any consent, approval, authorization or order of any court or governmental agency or body required for the execution, delivery and performance of such party hereunder.

6. Indemnity. Each of the Sellers (severally and not jointly), on the one hand, and the Conru Trust, on the other hand, agree to indemnify, defend and hold harmless the other party from any losses, damages, claims and expenses, including reasonable attorneys' fees in connection therewith and in enforcing this indemnity obligation, which the other party may incur arising from the breach by any such party of the covenants, representations and warranties contained herein.

7. Miscellaneous. This agreement is a binding and irrevocable commitment for the sale and purchase of the Notes as set forth herein, and the parties will execute, acknowledge and deliver all such further documents and instruments as may reasonably be required, and use commercially reasonable efforts to take such other action (or refrain from taking any action) as may be necessary or appropriate in order to effect the transactions contemplated hereunder. This agreement will be governed by and construed in accordance with the laws of the State of New York. This agreement may be executed in several counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one and the same instrument. Transmission of an executed counterpart by facsimile, email pdf or other electronic means will be legally binding.

AGREED TO AS OF THE TRADE DATE:

SELLERS (severally and not jointly):

KESTREL INDUSTRIES I LLC

By: *Paul Malek*
Name: Paul Malek
Title: Authorized Signatory

KESTREL INDUSTRIES II LLC

By: *Paul Malek*
Name: Paul Malek
Title: Authorized Signatory

PURCHASERS (severally and not jointly):

ANDREW B. CONRU TRUST

By: _____
Andrew B. Conru, Trustee

FRIENDFINDER NETWORKS INC.

By: _____
Name:
Title:

*[Signature Page to FFN Note Purchase Agreement]*

3