FRIENDFINDER NETWORKS INC.
SECOND AMENDMENT TO STOCKHOLDERS' AGREEMENT
DATED AS OF MARCH 1, 2021

This Second Amendment (this "*Amendment*") to the Amended and Restated Stockholders' Agreement dated as of May 1, 2018, as amended by that certain Amendment thereto dated as of February 18, 2021 (the "*Agreement*"), is entered into by and among FriendFinder Networks Inc., a Delaware corporation (the "*Company*") and the Stockholders signatory hereto who desire to amend the Agreement as set forth below.  Capitalized terms used but not otherwise defined herein shall have the respective meanings given in the Agreement.

1. (a) Andrew B. Conru and his Affiliates are a Designated Holder; and (b) Jonathan B. Buckheit holds at least 60% of the Voting Shares that he acquired from Kestrel I and Kestrel II; and together such Stockholders own more than 60% of the outstanding Voting Shares.  Accordingly, per Section 8.1 of the Agreement, the Company, Andrew B. Conru and his Affiliates and Buckheit may enter into this Amendment which will amend the Agreement accordingly.

2. The Agreement is hereby amended as follows:

    2.1    Section 1.1 of the Agreement is hereby amended by amending and restating the following definitions in their entirety to read as follows:

    "*Designated Holders*" means (i) Buckheit and his Affiliates so long as they own at least 50% of the Voting Shares that Buckheit acquired from Kestrel I and Kestrel II and (ii) Andrew B. Conru and his Affiliates, for so long as they continue to own at least 50% of the Voting Shares that they held as of the consummation of the Restructuring.

    "*Majority of the Minority Stockholders*" means, at any time that the Majority Stockholder owns 30% or more of the Voting Shares, (i) (a) Andrew B. Conru and his Affiliates and (b) holders of at least 20% or more of the Voting Shares held by Persons other than (y) Buckheit and his Affiliates and (z) Andrew B. Conru and his Affiliates, or (ii) holders of at least 80% of the Voting Shares held by Persons other than (w) Buckheit and his Affiliates and (x) Andrew B. Conru and his Affiliates.

    "*Majority Stockholder*" means Buckheit for so long as he or any of his Affiliates (a) collectively are the largest holder of the Voting Shares and (b) collectively own 30% or more of the Voting Shares.

    2.2    Section 2.8 and Articles VIII and IX of the Agreement are hereby amended and restated in their entirety to read as follows:

    "**2.8    Voting Provisions Regarding Board of Directors**.

    (a)    Size of the Board.  Each Stockholder agrees to vote, or cause to be voted, all Voting Shares owned by such Stockholder, or over which such Stockholder has voting control, from time to time and at all times, in whatever manner as will be necessary to ensure that the size

of the Board will be set and remain at four directors, unless and until Stockholders holding, in the aggregate, at least 75% of the outstanding Voting Shares approve otherwise. Currently, the Class 1 Directors (as defined below) shall be Marcin Narozny and an individual to be designated pursuant to Section 2.8(b)(i) and the Class 2 Directors (as defined below) shall be Ezra Shashoua and Jon Buckheit (collectively, the "*Current Board*").

(b) Board Composition. Each Stockholder agrees to vote, or cause to be voted, all Shares owned by such Stockholder, or over which such Stockholder has voting control, from time to time and at all times, in whatever manner as will be necessary to ensure that at each annual or special meeting of Stockholders at which an election of directors is held or pursuant to any written consent of the Stockholders, for the election of each of the members of the Current Board until any such members no longer serve, and thereafter for the election of any successors in accordance with the following:

(i) for so long as Andrew B. Conru continues to be a Designated Holder, Andrew B. Conru shall have the right to designate two members of the Board (the "Class 1 Directors"); provided that, following such time that Andrew B. Conru ceases to be a Designated Holder, the Stockholders other than Buckheit shall have the right to designate the Class 1 Directors at the next annual or special meeting of Stockholders at which an election of directors is held and at each subsequent election; and

(ii) for so long as Buckheit continues to be a Designated Holder, Buckheit shall have the right to designate two members of the Board (the "Class 2 Directors"); provided that, following such time that Buckheit ceases to be a Designated Holder, the Stockholders shall have the right to designate the Class 2 Directors at the next annual or special meeting of Stockholders at which an election of directors is held and at each subsequent election.

(c) Removal of Board Members. Each Stockholder also agrees to vote, or cause to be voted, all Voting Shares owned by such Stockholder, or over which such Stockholder has voting control, from time to time and at all times, in whatever manner as will be necessary to ensure that:

(i) Andrew B. Conru may remove and replace any Class 1 Director and Buckheit may remove and replace any Class 2 Director for such period of time that such Person is a Designated Holder; and

(ii) any vacancies on the Board shall be filled pursuant to the provisions of Section 2.8(b).

All Stockholders agree to execute any written consents required to perform the obligations of this Agreement, and the Company agrees at the request of any party or parties entitled to designate directors to call a special meeting of stockholders for the purpose of electing directors.

(d) <u>No Liability for Election of Recommended Directors</u>. No Stockholder, nor any Affiliate of any Stockholder, will have any liability as a result of designating a person for election as a director for any act or omission by such designated person in his or her capacity as a director of the Company, nor will any Stockholder have any liability as a result of voting for any such designee in accordance with the provisions of this Agreement.

(e) <u>D&O Insurance</u>. The Company shall procure directors and officers liability insurance on customary and commercial terms, providing for coverage of all directors in an amount no less than $10,000,000.

(f) <u>Director Compensation</u>. Unless otherwise agreed by (i) a majority of the Board and (ii) the Requisite Stockholders, each director will be compensated at the same rate. The Company shall reimburse the reasonable expenses incurred by each director in such capacity. Nothing herein shall prohibit the Company from separately compensating non-employee directors for other services.

## ARTICLE VIII
## AMENDMENT AND WAIVER

**8.1** **Amendment.**

Except as otherwise provided herein, the terms and provisions of this Agreement (including the schedules hereto) may only be amended, modified or waived pursuant to a writing signed by each of (a) the Company and (b) (i) for so long as each of (x) Andrew B. Conru and his Affiliates continue to be a Designated Holder and (y) Buckheit and his Affiliates continues to hold at least 60% of the Voting Shares that they hold after acquiring such Voting Shares, then at least 60% of the outstanding Voting Shares or (ii) from and after such time, Stockholders who, in the aggregate, hold at least 75% of the outstanding Voting Shares. Notwithstanding the foregoing, the veto rights of the Majority of the Minority Stockholders with respect to a Sale of the Company or a Specified Asset Sale contained in <u>Section 2.4</u> shall not be amended without the consent of the Majority of the Minority Stockholders at any time that the Majority Stockholder owns 30% or more of the Voting Shares.

**8.2** **Waiver.**

No course of dealing between the Company and the Stockholders (or any of them) or any delay in exercising any rights hereunder will operate as a waiver of any rights of any party to this Agreement. The failure of any party to enforce any of the provisions of this Agreement will in no way be construed as a waiver of such provisions and will not affect the right of such party thereafter to enforce each and every provision of this Agreement in accordance with its terms.

## ARTICLE IX
## TERMINATION

The provisions of this Agreement, except as otherwise expressly provided herein, will terminate upon the first to occur of (a) the dissolution, liquidation or winding-up of the

3

Company; (b) a Sale of the Company, or (c) the approval of such termination by each of (i) the Company, (ii) (x) for so long as each of (1) Andrew B. Conru and his Affiliates continue to be a Designated Holder and (2) Buckheit and his Affiliates continue to hold at least 60% of the Voting Shares that they hold after Buckheit acquired such Voting Shares, then at least 60% of the outstanding Voting Shares or (y) from and after such time, Stockholders who, in the aggregate, hold at least 75% of the outstanding Voting Shares, and (iii) the Majority of the Minority Stockholders. The provisions of this Agreement, except as otherwise expressly provided herein, will terminate upon the consummation of a Qualified Public Offering; provided, however, that Article IV (Registration Rights), Article VIII (Amendment and Waiver), this Article IX (Termination) and Article XI (Miscellaneous), and to the extent required for the foregoing provisions, Article I (Definitions; Rules of Construction), will survive until it is agreed to terminate such provisions by Stockholders who, in the aggregate, hold a majority of the outstanding Voting Shares agree to terminate such provisions. Following a Required Purchase Offer, if any Stockholder holds directly or indirectly, more than 92.5% of the outstanding Company Equity Securities then all provisions of this Agreement are terminated except Section 2.3 (Co-Sale Rights), Section 2.9 (Required Purchase Offer), Article VIII (Amendment and Waiver), this Article IX (Termination) and Article XI (Miscellaneous), and to the extent required for the foregoing provisions, Article I (Definitions; Rules of Construction). Notwithstanding anything contained herein to the contrary, as to any particular Stockholder, this Agreement will no longer be binding or of further force or effect as to such Stockholder, except as otherwise expressly provided herein, as of the date such Stockholder has Transferred all of such Stockholder's Company Equity Securities."

2.3   Section 11.8(a) of the Agreement is hereby deleted in its entirety and replaced with "Intentionally omitted."

3. Except as set forth above, the Agreement remains unmodified and in full force and effect and the provisions of Article XI of the Agreement (Miscellaneous) are incorporated herein and made part of this Amendment.

*[Signatures on following page]*

COMPANY

FRIENDFINDER NETWORKS INC.

*[signature]*
Jonathan B. Buckheit, CEO


ANDREW B. CONRU TRUST

By: *[signature]*
Andrew B. Conru, Trust


By: *[signature]*
Jonathan B. Buckheit

*[Signature page to FFN Stockholder Agreement Amendment 3/1/21]*

5