UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

ANDREW CONRU,

    Plaintiff,

v.

JONATHAN B. BUCKHEIT,

    Defendant.

Case No. 23-cv-04056-BLF

**ORDER DENYING MOTION TO DISMISS**

[Re: ECF No. 15]

Plaintiff Andrew Conru brings this action alleging Defendant Jonathan Buckheit breached a Call Option Agreement ("COA") entered into by the parties in 2021 when Defendant refused Plaintiff's attempt to execute the option two years later. ECF No. 1 ("Compl.") ¶¶ 29–30. Defendant moves to dismiss the complaint, arguing that the option lapsed because "Plaintiff failed to timely deliver the expressly required specific consideration" required by the COA. ECF No. 15 ("Mot.") at 2; ECF No. 21 ("Reply"). Plaintiff opposes the motion, arguing that the COA is irrevocable because it was based on consideration, that it was otherwise irrevocable during a vesting period defined in the COA, and that a waiver provision in the COA prevents the option from lapsing. ECF No. 17 ("Opp.").

For the reasons described below, Defendant's motion is DENIED.

**I.   BACKGROUND**

The following allegations are taken from the complaint and taken as true for the purposes of this motion. In 1996, Plaintiff founded the company that became FriendFinder Networks, Inc. ("FFN"), which hosted an online dating and adult content platform. *Id.* ¶ 10. Plaintiff sold the company in 2007, and it went bankrupt in 2013. Compl. ¶¶ 11–12. In 2015, Defendant became the new CEO of FFN. Compl. ¶ 14.

On February 18, 2021, the parties entered into and signed the COA. Compl. ¶ 1; ECF No 1-1 ("COA"). The COA grants Plaintiff the ability to secure the option ("Call Right") to purchase a declining number of Defendant's shares in FFN. Compl. ¶¶ 15–17; COA § 1(a). Section 1(a) of the COA contains the terms of the Call Right:

> <u>1. Grant of Call Option.</u>
> (a) <u>Right to Purchase.</u> Subject to the terms and conditions of this Agreement, for a period commencing on the date hereof and ending at the close of business on a date that is twelve (12) years from the date hereof (the "**Exercise Period**"), Grantee shall have the right from time to time (the "**Call Right**"), but not the obligation, to cause Grantor to sell all or a portion of the Shares, subject to the vesting provisions set forth in Section 1(b) below, at the Call Purchase Price (as defined in Section 2 of this Agreement). To secure this Call Right, Grantee shall pay a fee of $1,000.00 to Grantor (the "**Call Option Fee**").

COA at 1 (emphasis in original). Section 1(b) contains a vesting schedule whereby the shares available to Plaintiff for purchase decreases by 1/48 of the total amount of shares each quarter for 12 years. *Id.* Also relevant to this litigation is section 7 of the COA, the "Waiver Provision":

> <u>7. Amendment and Modification; Waiver.</u> . . . No waiver by any party of any of the provisions hereof shall be effective unless explicitly set forth in writing and signed by the party so waiving. Except as otherwise set forth in this Agreement, no failure to exercise, or delay in exercising, any rights, remedy, power or privilege arising from this Agreement shall operate or be construed as a waiver thereof; nor shall any single or partial exercise of any right, remedy, power or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power or privilege.

*Id.* at 3.

The parties executed at least four other agreements within two weeks of signing the COA. First, also on February 18, 2021, Defendant directly purchased all right, title, and interest in 350,297 common shares, representing 51% ownership of FFN, from Kestrel Industries I LLC and Kestrel Industries II LLC ("Kestrel affiliates"). Compl. ¶¶ 20; ECF No. 1-2 ("Purchase Agreement"). That purchase allowed Defendant to assume majority control of FFN for the nominal sum of $1,000. Compl. ¶ 21; Purchase Agreement at 1. The second agreement, also entered into on February 18, 2021, is an amendment to FFN's Stockholders' Agreement reflecting Plaintiff's consent to Defendant's purchase of the FFN shares. Compl. ¶ 22; ECF No. 1-3. Section 13 of the COA also calls out this amendment, stating "[upon] Grantor [Defendant]

obtaining the Shares pursuant to the Purchase Agreement, Grantor [Defendant] and Grantee [Plaintiff] agree that they will execute an amendment to the Amended and Restated Stockholders' Agreement[.]" COA at 4.  Third, also dated February 18, 2021, is "a Note Purchase and Sale Trade Confirmation and Agreement," where Plaintiff "(acting through his trust) agreed to purchase debt instruments held by the Kestrel affiliates for a sum exceeding $60 million."  Compl. ¶ 23; ECF No. 1-4.  Fourth, on March 1, 2021, the parties amended the Stockholders' Agreement, to "provide[] additional benefits to Buckheit, including director representation on FFN's Board of Directors."  Compl. ¶ 24; ECF No. 1-5.

Almost two years after the parties signed the COA, on February 3, 2023, Plaintiff sent a certified letter to Defendant, referencing the Call Option Agreement and enclosing a $1,000 check for payment of the Call Option Fee.  Compl. ¶ 29; ECF No. 1-6.  Defendant responded, stating that he would return the check, that Plaintiff could no longer "consummate the call option" because Conru had not tendered the payment within a reasonable time, and that Defendant had revoked the option.  Compl. ¶ 30.

On August 10, 2023, Plaintiff filed the instant action, alleging four causes of action: 1) declaratory judgment, 2) breach of contract, 3) breach of covenant of good faith and fair dealing, and 4) specific performance.  *Id.* ¶¶ 40–65.

## II.   LEGAL STANDARD

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'"  *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)).  When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff.  *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011).  However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).  While a complaint need not contain detailed factual allegations, it "must contain sufficient factual

1  matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*,
2  556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A
3  claim is facially plausible when it "allows the court to draw the reasonable inference that the
4  defendant is liable for the misconduct alleged." *Id.*  On a motion to dismiss, the Court's review is
5  limited to the face of the complaint and matters judicially noticeable. *MGIC Indem. Corp. v.*
6  *Weisman*, 803 F.2d 500, 504 (9th Cir. 1986); *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578,
7  581 (9th Cir. 1983).

## III. DISCUSSION

### A. Claims One, Two, and Four

Defendant argues that claims one, two, and four fail as a matter of law for three reasons: 1) that the "Call Right Option" lapsed because Plaintiff did not pay the required specific consideration of $1000 at signing of the agreement or within a reasonable time thereafter, Mot. at 8–13; 2) that the time period with which Plaintiff could exercise the option is not 12 years (the "Exercise Period"), *id.* at 14–15; and 3) that the "Waiver Provision" does not prevent the option from lapsing, *id.* at 15–16.  The Court addresses each in turn.

#### 1. "Call Right Option" Lapse

Defendant first argues that the claims must be dismissed as a matter of law because nearly two years passed after the parties signed the agreement and before Plaintiff attempted to pay the $1000 "Call Option Fee" to "secure [the] Call Right," which caused the option to lapse. Mot. at 9–14.  Plaintiff responds that there was consideration other than the $1000, and that the option is therefore irrevocable. Opp. at 10–15.  Alternatively, Plaintiff argues that even if the $1000 was the consideration, whether the option lapsed is a factual determination not appropriate for the pleadings stage. *Id.* at 15–22.  The Court first addresses consideration, then whether the option lapsed.

##### a. Consideration

"An option based on consideration, whether it be the proverbial peppercorn or some other detriment, is itself a binding contract within the traditional and accepted sense." *Torlai v. Lee*, 270 Cal. App. 2d 854, 858 (Ct. App. 1969).  It is well-established that an option based on

1  consideration is irrevocable. *See id.* ("an option based on consideration contemplates two separate
2  contracts, i.e., the option contract itself, which for something of value gives to the optionee the
3  irrevocable right to buy under specified terms and conditions, and the mutually enforceable
4  agreement to buy and sell into which the option ripens after it is exercised").

5        Defendant argues that the COA was not irrevocable because the $1000 "Call Option Fee,"
6  which Plaintiff did not pay for nearly two years, was the sole consideration of the COA. Mot. at
7  12–13. Plaintiff does not dispute that he did not attempt to pay the $1000 Call Option Fee for
8  nearly two years. Rather, Plaintiff contends that the COA was executed in conjunction with
9  several other agreements, including Defendant's purchase of the majority stake of FFM and the
10 amendments to FFN's stockholder agreement, and argues that the broader agreements were the
11 consideration. Opp. at 11.

12       Indeed, the Complaint alleges that "[t]he COA was part of a three-way transaction that also
13 involved a banker owning 51% of FFN's debt (approximately Ninety Million Dollars ($90
14 Million)) and equity (350,297 shares)" and points to several contemporaneous agreements
15 involving or between the parties. Compl. ¶¶ 2, 15, 19–24; COA at 1 (noting that "Grantor
16 [Defendant] is purchasing 350,297 shares" and later stating "in consideration of the foregoing").
17 The COA also required amendment of the Stockholders' Agreement. Compl. ¶¶ 22, 24; COA at 4.
18 Drawing all inferences in Plaintiff's favor, Plaintiff has plausibly alleged that the $1000 Call
19 Option Fee is not the sole consideration agreed upon by the parties. Thus, the Court cannot find as
20 a matter of law at this stage that the COA is not an irrevocable option.

21       b.  Lapse

22       Plaintiff's plausible allegation that he tendered the consideration required to make the
23 COA irrevocable is enough to deny Defendant's motion. Even if the Court assumes *arguendo* that
24 the $1000 Call Option Fee was the sole consideration and that the option was not irrevocable,
25 Defendant's argument that the COA lapsed because Plaintiff waited nearly two years to pay the
26 Call Option Fee fails.

27       Defendant argues that since Plaintiff did not pay consideration, the contract lapsed in the
28 nearly two years that passed before Plaintiff attempted to execute the option. Mot. at 13–14.

Plaintiff responds that "the issue of reasonableness cannot be determined at this premature stage in any event." Opp. at 21.

"A proposal is revoked by . . . the lapse of the time prescribed in the proposal for its acceptance or, if no time is prescribed, the lapse of a reasonable time without communication of the acceptance." Cal. Civ. Code § 1587. "What is a reasonable time is a *question of law* for the courts," *Standard Box Co. v. Mutual Biscuit Co.*, 10 Cal. App. 746, 750 (1909) (citing *Roberts v. Evans*, 43 Cal. 380, 383 (1872) (emphasis added)), and "depends upon the facts and circumstances of the particular case." *Lohn v. Fletcher Oil Co.*, 38 Cal. App. 2d 26, 32 (1940).

Defendant points to several cases where the reasonable time during which a revocable option lapsed was far less than two years. *Roberts*, 43 Cal. at 383 (one year); *Standard Box*, 10 Cal. App. at 750 (ten months); *Crossmore v. Page*, 73 Cal. 213, 215 (1887) (seven months). But these examples are not persuasive at this stage; there is no per se or statutory length of time before a revocable option lapses because the determination depends on the "facts and circumstances" of the case. *Lohn*, 38 Cal. App. 2d at 32. Indeed, Defendant's cited examples are all rulings on post-trial appeals. *See Roberts*, 43 Cal. at 381 (appeal from "order overruling the defendant's motion for new trial"); *Standard Box*, 10 Cal. App. at 748 (appeal from "order denying [the defendant's] motion for a new trial"); *Crossmore*, 73 Cal. at 214 (appeal from order "granting a new trial"). Defendant does not cite a single case where the reasonableness determination was made at the pleadings stage. Nor does Defendant point to any indisputable fact obvious from the face of the complaint or the COA that would permit the Court to make a fact-based determination at this stage. Thus, even if the unpaid $1000 is the sole consideration for the COA, when the Court draws all inferences in Plaintiff's favor, Defendant has not shown as a matter of law that a reasonable time has passed such that the COA has lapsed.

\*   \*   \*

The Court finds that Plaintiff has plausibly alleged that the $1000 Call Option Fee is not the sole consideration of the COA, and that even if it is, issues of fact preclude a determination at the pleadings stage that the proposal was revoked by the lapse of a reasonable time. Accordingly, Defendant's motion to dismiss claims one, two and four is denied.

### 2. Exercise Period and Waiver Provision

Because the Court denies Defendant's motion to dismiss on the grounds stated above, the Court need not address Defendant's "Exercise Period" or "Waiver Provision" arguments.

## B. Claim Three

Defendant argues that claim three for breach of the covenant of good faith and fair dealing should be dismissed because he "was acting within the express rights granted him by the COA, and could not, therefore, be in breach of the covenant of good faith and fair dealing." Mot. at 17. Plaintiff responds that Defendant's arguments for claim three fail for the same reasons as claims one, two, and four. Opp. at 25 n.3. Because Plaintiff plausibly alleges claims one, two and four—essentially, that Defendant was not acting within express rights granted by the COA—it follows that Plaintiff plausibly alleges breach of the covenant of good faith and fair dealing. Accordingly, Defendant's motion to dismiss claim three is denied.

## IV. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that Defendant's motion to dismiss is DENIED.

Dated: March 21, 2024

_____
BETH LABSON FREEMAN
United States District Judge